Your Honors, good morning. Gary Burcham for Appellant Calvin Thomas. I'd like to start by addressing what really is going to be, I think, a central issue in this case, and that is whether this case should be governed by Cronic or whether it should be governed by Strickland. The facts of this case are quite unusual. Mr. Thomas was charged in a six-count indictment, three counts of substantive crimes, two counts of robbery, one count of substantive crimes. Without ever telling Mr. Thomas about his intentions, the defense counsel stood up during opening statement and informed the jury that Mr. Thomas indeed had been present and committed the robbery at the UPS office and therefore was guilty of count three of the indictment. Certainly, we recognize that Cronic is the exception and not the rule with respect to analyses of Sixth Amendment claims. For Cronic to apply, we must show that the error by counsel failed to subject the prosecution's case to meaningful adversarial testing. Completely. Completely. So how do you get completely out of this? We get completely when you take a practical look at the evidence in the case and the way the evidence was intertwined between the events on February 8th and February 9th. The government basically says there were six counts. He only conceded as to one count. Therefore, there was not a complete failure to contest the government's case. I think the problem with that argument is that the facts of the case really overlap as to the two events on the 9th. It's our position that when defense counsel for Mr. Thomas stood up and basically said Mr. Thomas was present at the 9th, that because of the factual overlap between the two events, the 8th and the 9th, that essentially was a concession that he was also present on the 8th, again, due to the similar facts between the two events. There's an argument that that's not so, but even if it is so, why isn't it a sensible strategic decision to say I've got a shot at sparing the guy from the big sentence, the big conviction, with carrying the big sentence, by admitting what's obvious to everybody in the courtroom, that he was present at the robbery, but it wasn't he who shot at the agent? I think there's a couple of problems with that argument. First of all, he never informed his client of that tactic. That's a different issue. Okay. Well, I think the government proceeded primarily on aiding and abetting theory, and the government's own brief has said... Well, but we said that there was none, so we ended that on the last appeal in this case. You ended that as to Mr. Fields, not as to Mr. Thomas. So there was no aiding and abetting possibility. There was only one shooter. The shooter was Thomas. Ended. The evidence at trial was that Mr. Thomas was the one who supplied the gun that was involved in the case, and so that certainly would, I think, provide a ground for an aiding and abetting theory, but it's very reckless for an attorney to stand up and concede guilt when I assume defense counsel knew that the government was going to get jury instructions rating and abetting and was going to proceed under a theory that it didn't matter who shot the gun. These three people were working in conjunction, and therefore, if Mr. Thomas was present in the Suzuki and people were shooting outside the back of the car, then he also must have been... Then he should have been guilty of the assault, the 924, and also the 924 for the February 9th robbery. So if the court doesn't think that it was a complete failure to test the government's case, at least a failure to submit the government's case or contest the government's case with respect to counts 3, 4, 5, and 6, which were the robbery, the 924 for that robbery, the assault, leaving the bank, and the 924 attaching to that. Let me ask you this question. Is it possible to isolate the UPS count and the robbery count that he conceded to and say that Chronic would apply to that count only, and therefore, there's a presumption of prejudice that would justify invalidating that count, but not any of the others? I believe the answer to that is yes, I believe that. How would you do that? You just argued that they're all intertwined. So how do you presume there's a presumption of prejudice as to one count and then isolate it from the others? Well, again, we do believe that they were sufficiently intertwined such that Chronic should cover the entire indictment. But if the court feels that that's not the case, then it certainly could narrow the Chronic analysis simply to the count of conviction or the count of the indictment, which was the one it was conceded to, which was count 3, and also the 924 count that would attach to that. And given that it was the same event on the same day, we would say that that would also encompass counts 5 and 6, the assault. Well, see, that's what you're going beyond. In other words, you're not limiting it to the one count. You're now throwing in the rest of the counts that are attached to. My question was, can you apply Chronic presumed prejudice solely to that count, and then you analyze all the other counts under a Strickland error, prejudice? Yes. Okay. So one could rationally, in your view, come up with a conclusion that it was Chronic error to waive a defense as to the robbery count alone, but then submit to a Strickland analysis on all the remaining five counts, whether they're three on that day and then the bank robbery the day before, or whatever the number is, and a result, assuming that we were to conclude there was no prejudice in a Strickland sense to all the other counts, then you'd wind up with a reversal strictly as to the UPS robbery. I believe that that could be an approach the Court could take, which would be consistent with Chronic and the facts of this case. However, I would submit to count 4 because it relies upon a conviction for count 3 also would have to be kicked pursuant to a Chronic analysis simply as to count 3. What would happen to the sentence if we just simply vacated as to the UPS robbery? There would be no change in the sentence. That was imposed concurrent with the count 1 conviction, at least seven years for the robberies. And so were the Court simply to not change the sentence for Mr. Thomas, who's now doing more than 50 years in prison for these convictions. I have about two and a half minutes. May I reserve that for rebuttal? Sure. Thank you very much. Your Honor, may it please the Court, I'm Alka Sager for an appellate in the United States. The Chronic standard should not apply in this case. This was a situation in which the defendant really, the defense counsel, really had no good options. There was overwhelming evidence of the defendant's involvement in the UPS robbery. Counsel, what do we make of the fact that he didn't advise his or consult with his client? Nixon seems to tell us that that's essential. The Nixon, in the Nixon case, there was evidence that the attorney had informed, had notified his client that he would be conceding his guilt. But there's a lot of language in Nixon that stresses the importance of consultation. But in Nixon, the defendant did not consent. He was But he, there was consultation, and there apparently was none here. Well, the record in this case is that the defense attorney couldn't recall specific discussions, but did notify the defendant he would be focusing on the firearms charges. That's not the same thing as the kind of consultation that I think is contemplated. There was Wouldn't you agree? There's no opportunity for the defendant to say, I agree with that strategy because I know you are going to stand up and concede my guilt. That's not the same thing as focusing on other counts, is it? The government agrees that there is no evidence in the record to show that the defendant in this case agreed to his counsel's strategy. Or even knew that he was going to concede guilt. The 2255, in his 2255 petition, the defendant does say that he vaguely recalled his attorney telling him that he would be focusing on the firearms charges, but he didn't realize that that would be the same as a conceding guilt on the UPS. Seems a reasonable position, interpretation for the defendant, doesn't it? So don't we have to then address this case as one where there was no consent for sure to dropping any defense as to the UPS charge, and that the only consultation really focused on focusing on other counts? The district court, in denying the petition, found that whether or not the defendant consented to his counsel's decision didn't bear on ineffectiveness. And he found that based on the prejudice analysis, that even if the defendant in this case knew about and had consented in his counsel's decision to concede on the UPS robbery, there could be no showing of prejudice, given the overwhelming evidence of the defendant's involvement in the robbery and the fact that this was a reasonable strategy designed to focus the jury on those charges in which the evidence was weaker and for which the defendant faced the greatest sentencing exposure. I understand what the district court ruled, and you've summarized it well. The question I think where Judge Fletcher has surfaced is whether under Nixon we look to the fact of non-consultation on this particular issue as bearing ultimately on whether we even apply Strickland or whether we throw it into the chronic basket because there was no consultation at all. Well, I would argue that this Court should not use the fact that there was no consent to the strategy to put it under the chronic umbrella. But with no consultation, I think we have to assume on this record that there was neither consultation or consent. So what do we do with that? Well, I would submit that the record shows there was notification. Now, how far does the attorney have to go to make sure that the defendant realizes what that notification is? Clearly, an express... Can you say there was notification when all of the record shows that he said, I'm going to concentrate on these other parts of the case? Well, it shows that the attorney told his client what his focus was going to be. And when you look at... Counsel, that is not the same. I don't know why you keep insisting that that's in effect the same as telling him, and he remained silent in the face of it, that because I'm going to focus on that, I'm going to confess your guilt to this robbery. That's not notification of that strategy. How can you say otherwise? Well, he's notifying his client that he's focusing on the gun charges. I understand that he's focusing. I can focus all day on one part of your argument, okay? You will focus here and are focusing on one part of your argument. You are not conceding what you don't talk about before this court, are you? No. Okay, and you wouldn't be doing that in front of a jury. No, that's right. So the defendant can't be assumed on this record to have understood that his counsel was going to stand up and say my guy is guilty of being the robber at the UPS store. Whether or not... No notification, no consent. Okay, let's assume that the defendant did not consent to his client's... No, was not notified. Was not notified that his client would be conceding his guilt on the UPS robbery, even so, there's no requirement that he... If the counsel's decision is a reasonable trial strategy, which it was in this case, there's no decision which holds that the defendant has to agree to that type of... It's not agree. It's be notified. You keep wanting to go to consent. This is a very difficult case because there is neither consultation or consent. So let's stick to the no consultation or no notice. Let's assume that even if the defendant was not notified of the concession to the UPS robbery, we still come back to whether or not it would have made any difference in the end, the prejudice analysis. I would argue that even no notification, given the fact that this was not some sort of flagrantly irrational trial strategy, the fact that he wasn't notified doesn't take it out of the Strickland analysis. This is not per se prejudicial when you look at what counsel did in the context of the entire case. If there had been only these counts and what the lawyer was trying to do as in Nixon was to get a concession as to a sentence, would you say that under Nixon that this would be okay? I would say that under Nixon there was no consent, but there was notification. No, there was no consultation. I still don't see how it takes it out of the Strickland prejudice analysis. In Nixon, the court found that counsel's concession was a reasonable trial strategy. Yes, but in the context of having tried to consult with the client time and time again and the clients not saying don't do it, but just kind of listening and doing nothing. I don't believe the decision really turns on the fact that counsel was notified. I don't see how at what point does counsel need to notify his client about every single trial strategy. Well, he doesn't have to. Well, I would argue that conceding guilt to the UPS robbery isn't the same as a guilty plea, the type of decision that. But you're suggesting that it's okay for a defense counsel to waltz into court and plead no defense, not guilty, but no defense to one account of robbery, just can walk in without consultation, and there's no duty of the attorney to do that. Well, I think this reviewing court has to look at the case from counsel's perspective, and it's a fact-specific inquiry. I'd like to understand the facts in which an attorney can walk into court this case without telling his client in advance that he is going to, by focusing on the gun charge, going to tell the jury explicitly that you, my client, were guilty of that robbery. It's a reasonable trial strategy because. . . It may be a reasonable trial strategy, but how is it not part of the duty of the attorney-client privilege? I'm looking at it from the. . . The court in Nixon says there is a duty to consult and obtain consent in the case of a guilty plea. Are you saying that Nixon has nothing to say about what happens when it's less than an absolute plea, but it's a confession of guilt for purposes of the trial? Is that the government's position? Nixon holds that there is a duty to notify in that case the duty was satisfied, but I don't think the ultimate decision in Nixon, that is the application of the Strickland prejudice standard, rests on the fact that there was notification. My question is plain and simple. Is it the government's position that it is, there's no breach of the duty of representation under Strickland to tell your client advance notice that you are going to plead him guilty before the jury, not a guilty plea, but you're going to waive any defense as to guilt of one of the substantive counts in the indictment? I would argue that even if counsel's performance was deemed deficient for failure to notify his client that he was going to concede his guilt, there has to be a showing of prejudice. And that would be the holding of the Holman case. It's a Seventh Circuit case in which the Court found that the decision to concede guilt on one drug possession count in order to contest guilt on the other counts. So the answer to my question is, yes, it's an ineffective assistance, but there's no prejudice. No prejudice. I'd like, I know your time has expired, but I'd like you to comment on what spillover onto the other counts resulted from this plea. The defendant argued vigorously before the jury that there should be no spillover. And in doing so, the counsel argued to the jury that the only evidence which tied the defendant to the bank robbery the day before was Mr. Parris, that the witnesses inside the bank had given inconsistent identifications, that their in-court identifications were inconsistent with the fact that they had been unable to accurately describe the defendant or pick him out of photo spreads. The defendant argued that while defendant was guilty of the UPS robbery, there was no evidence indicating that he knew that Parris was going to bring a gun to the robbery and use it, and urged the jury to find him not guilty of the 924C count on the UPS robbery. With respect to the assault, counsel argued that it was Mr. Fields that was the shooter, that Agent Enyart's testimony as to Thomas being the backseat passenger was at odds with the report that Enyart wrote, which indicated that Thomas was the last one to get into the vehicle, and you could infer from that that he sat in the front. In addition, he argued that there was no evidence that Thomas knew that Fields was going to use the gun to shoot the agent. He argued that Parris was the mastermind, and that Parris was falsely implicating the defendant in the bank robbery the day before, simply to get a better deal from the government. So I would submit that there really was no spillover in light of the... Certainly that was the defense lawyer's position, but if you look at the evidence, there was the same car, the same black man. Many things that would cause the jury, obviously, to disbelieve this approach. Well, there were differences in how the witnesses described the robbers and their physical descriptions. The bank witnesses and the UPS witnesses gave different physical descriptions of the robbers, and the photographs of the bank robbery were not crystal clear, and the defendant argued that you really couldn't pick out Defendant Thomas from those photographs. Thomas wore a ski cap in one robbery, and he covered his face with a rag in the other. There were differences that could have been... At the end of the day, he was convicted of all of them. He was convicted of all of them because the jury chose to believe aspects of Parris's testimony, and he was convicted because the jury didn't believe the argument. But we shouldn't be second-guessing counsel's trial strategy, which at the time he made it was reasonable given the very limited options he had in this case and the substantial sentencing exposure the defendant faced on the gun charges. Thank you. Thank you. All right. Mr. Burcham, we'll equalize your time so you have as much as you need. Thank you very much, Your Honor. The government keeps talking about tactical decisions, strategic decisions. Tactical decisions are calling witnesses, investigating certain leads, not investigating certain leads, arguing certain theories, not arguing certain theories. An attorney walking into court without telling his client and essentially pleading his client guilty to a serious felony is not a tactical decision. It's left to the domain of the defense counsel. There's not a senior case... The thing is it's easy to focus just on the UPS robbery count. Right. That, of course, was not what was in counsel's mind. He wasn't concerned just about that count, and it wasn't just that count that was before the jury. He was faced with a humongous tale out there, which is the 924, which is the shooting. And he needed to convince the jury not to convict his client of shooting at the agent. I... The two have to go together. I understand the reason that defense counsel did this, and I think defense counsel had the best intentions in mind. I don't think this was... But it was a tactical decision. It was, but what's... But your argument is that he didn't tell his client about it, not that it wasn't a tactical decision. It was just a tactic he didn't clear with his client. I think it was a horrendous tactical decision, given the facts of this case. But I think what sets this tactical decision apart from other cases where a concession of guilt has to one count what was upheld by a court of appeals is that in those cases the attorney sat down with the client before trial and said, hey, this is a strategy I'm going to adopt at trial. I think it's best to concede guilt as to... Let's suppose that the rule emerges from this case. I'm not saying it will, but just hypothetically, that if an attorney who decides to basically concede guilt as to one of the major substantive counts does so as a tactical matter but without consulting with his client and telling the client that that's what he's going to do, that that is essentially automatic ineffective assistance of counsel and then one goes to the prejudice side of the equation. I would certainly agree that it would be ineffective. I would submit that in an extraordinary situation like that it would go too chronic. It would go presumed prejudice based upon the fact that that count has been completely eliminated from defensibility from a defense standpoint. So how do we draw the line between when it's chronic where there's failure to consult and strickland where there's failure to consult? I think the consultation with the client would take most cases into the strickland arena, but I think in a situation like this where it's just out of nowhere with no knowledge of the client beforehand making the concession, I think that that requires the application of chronic. Briefly, to conclude, I also... You've got time. We're equalizing it. Okay, thank you. I also raised a different constitutional violation as a result of this, which is the due process violation. Same facts of the case, same acts by the defense counsel, but in addition to having a Sixth Amendment violation of Mr. Thomas' right to effective representation by his attorney, we also had his attorney basically renouncing his constitutional right to a jury trial without a knowing involuntary waiver by Mr. Thomas. And so while we can look at this purely from a Sixth Amendment standpoint, I see chronic strickland. I think probably the more accurate or more on-point right that was deprived of Mr. Thomas was his due process right to have his entire basket of constitutional rights protected only to the point and only renounced or waived if he knowingly involuntarily did so. In this case, when defense counsel stood up during an opening statement and essentially pled him guilty to count three and count four of the indictment, it's our position that that was also a Fifth Amendment due process violation. Thank you very much. All right. Thank you, counsel. Both of you, the matter just argued will be submitted.
judges: B. Fletcher, Rymer, Fisher